## BROWN *v.* TROUSDALE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

No. 158. Argued January 22, 23, 1891.— Decided February 2, 1891.

A large number of taxpayers in Muhlenburgh County, Kentucky, filed their bill against the officers of the county, and against two holders of bonds of the county, one holding " original " bonds issued to pay a county subscription to stock in a railway company, the other holding " compromise " bonds issued in lieu of some of the " original " bonds. . The relief sought was to restrain the sheriff from levying a tax already ordered, and to restrain the county judge from making future levies, and to have both classes of bonds declared invalid, and the holders enjoined from collecting principal or interest, and that notice might be given to unknown bondholders, and for general relief. A large number of the bonds of each class were held by citizens of Kentucky. The two bondholders, defendants, (who were taxpayers in the county,) declined to make defence. Bondholders, citizens of Tennessee, then voluntarily appeared and asked to be made parties, and, their prayer being granted, petitioned in August, 1885, for the removal of the cause to the Circuit Court of the United States on the ground that there was a controversy that was wholly between citizens of different States, and which could be fully

determined as between them, that the defendants, the ministerial officers of the county, had no interest in the controversy, that the two bond-holders were acting in concert with the plaintiffs, and that the petitioners were the only parties that had a real interest in the controversy adverse to the plaintiffs. The cause was removed to the Circuit Court, and, a motion to remand having been denied, the bill was dismissed. *Held,*

(1) That the amount involved was sufficient to give jurisdiction;

(2) That the motion to remand should have been granted;

(3) That the removal could not be sustained under the first clause of the act of March 3, 1875, 18 Stat. 470, then in force, because the controversy was not between citizens of different States, as the parties could not be so arranged on the opposite sides of the matter in dispute as to bring about that result; nor, under the second clause of the section, because there did not exist a separable controversy wholly between citizens of different States, and which could be fully determined between them.

UPON the 27th of July, 1885, several hundred taxpayers of the county of Muhlenburgh, Kentucky, filed their bill of complaint in the Circuit Court of that county for themselves and others associated with them, numbering about twelve hundred, as well as "for and on behalf of all other taxpayers in the said county of Muhlenburgh, and for the benefit likewise of said county," against Tinsley, the sheriff, and Morton, the county judge, of the county; and Kittinger, Young, Weir, Whitaker, Newman and Mills, members of a funding board, and "any other member of the funding board; and Robert Glenn, holder of original bonds; George D. Park, holder of compromise bonds, and all holders of bonds issued to the Elizabethtown and Paducah Railroad Company;" alleging upon various grounds the invalidity of an issue of bonds in 1869, under an act of February 24, 1868, to the amount of $400,000, in payment of an alleged subscription of that amount on behalf of the county to the capital stock of the railroad company, and also of certain new bonds issued in 1878 in compromise of the former bonds, under an act of March 18, 1878, creating a board for the purpose of funding the prior indebtedness. The bill averred the levy of a tax to pay interest on bonds by the county judge, and that the sheriff was about to proceed in the collection thereof, and made the sheriff and county judge parties defendant; and prayed an injunction against the sheriff from attempting to

collect the particular tax, and against the county judge from making any order or further levy in the premises, and for a decree that the original bonds be declared invalid and all holders thereof be perpetually enjoined from collecting the principal of the bonds and the interest thereon, and that a like decree be made as to the bonds issued under the funding act.

The plaintiffs made the members of the funding board and two bondholders residing in the county of Muhlenburgh, one holding an original bond or bonds, and one holding a bond or bonds under the funding act, defendants; and alleged that they did not know the other holders of the bonds and therefore could not give their names, and asked for notice to be given to the unknown bondholders under both acts, and for general relief.

The bill was sworn to on the 22d of July, 1885, and an order granting the injunction as prayed was made by the judge of the Muhlenburgh Circuit Court on the 23d, and entered of record, upon the filing of the bill. A summons and injunction issued and were served accordingly. Notice was given by counsel for defendants, dated August 5, and served August 8 and 10, that on the 12th of August the defendants would move for an order dissolving the injunction, and a motion to that effect was filed, as also a general demurrer to the petition. On that day an order was entered, setting down the motion to dissolve and the demurrer, for hearing, on the 14th of August, "by consent of counsel on both sides." On the 21st of August, the application and affidavit of James Alexander was presented, stating that "he is one of the defendants hereto, described generally as a holder of bonds issued to the Elizabethtown and Paducah Railroad Company;" and "that he holds and owns, and so held and owned at the time of the commencement of this action, nine bonds of the face value and denomination of one hundred dollars each and one bond of five hundred dollars" to which bonds interest coupons since March 1, 1884, were attached, and he asked "to enter his appearance and make defence to this action." Whereupon an order was entered in these words: "This day came James Alexander and presented his petition to be made a

party defendant to this action and to be allowed to make defence to the same; which petition is ordered to be filed, and said James Alexander is made a party defendant to this action."

Simultaneously, Charles W. Trousdale made a similar application, as the holder of $7000 of the compromise bonds of the county of Muhlenburgh, and a like order was entered thereon. On the same day Trousdale and Alexander presented their petition for a removal of the cause to the United States Circuit Court for the District of Kentucky, stating: "That the matter and amount in dispute in the above-entitled suit and action exceeds, exclusive of costs, the sum or value of five hundred dollars, $500.00; that the controversy in this suit is between different citizens of different States; that your petitioners were at the commencement of this action and still are citizens of the State of Tennessee, and the plaintiffs, each and all of them, were then and still are citizens of the State of Kentucky. Your petitioners further state that in this suit and action above mentioned, there is a controversy which is wholly between citizens of different States, and which can be fully determined as between them, that is to say, a controversy between these petitioners on the one side and the said plaintiffs on the other; that the defendants Alexander Tinsley, J. H. Morton, Martin Kittinger, Wm. Young, Samuel Weir, A. E. Newman and J. E. Mills, and each and every one of them, are ministerial officers of the said county of Muhlenburgh, and have no pecuniary interest in this controversy; that the defendants Robert Glenn and George D. Park refuse to make defence to the petition, and are acting in concert with the plaintiffs therein, and petitioners are the only parties that have any real interest in the controversy adverse to plaintiffs;" and tendering bond and praying for the transfer of the suit. They also made a formal motion for the order of removal.

On the 22d of August, the affidavit of Glenn and Park was filed, averring that "they were made parties defendant in said cause without their knowledge or consent; that no collusion existed between affiants and the plaintiffs in said cause before the filing of their petition and no collusion exists now, and the affiants are holders and owners of the bonds of said

county in good faith, and that the statement alleging affiants' collusion, in the petition for a removal of this cause to the United States Circuit Court, with the plaintiffs, is not true;" that their action was "based on their own judgment as to the justice of the same, and believing that the justice is with the plaintiffs they do not choose to resist the plaintiffs' claim;" and they also severally answered, saying that they had no defence to make and asking that the motion to dissolve the injunction and the demurrer be withdrawn, so far as they might be parties thereto.

Upon the same day the affidavit of C. L. Morehead was filed, stating that he was the agent of the funding board, and from information he had obtained from his coagent, he believed "that a majority of the new bonds of said county are owned and held by citizens of the State of Kentucky;" and also the affidavit of Louis Jones, "that he has opportunity for knowing the professed owners of the bonds of Muhlenburgh County, Ky., issued to the Elizabethtown and Paducah R. R. Co." This opportunity resulted from the fact that he was a member of the General Assembly of Kentucky from which the bond-holders aforesaid sought legislation on their behalf, and also from the fact that he was a justice of the peace of said Muhlenburgh County, and was proceeded against on behalf of said bondholders for the purpose of compelling a levy to satisfy interest on the said bonds. He states, from all the facts, expressions and disclosures in their affairs, he is satisfied that at that time about three-fourths of the said bonds were held and owned by residents of the State of Kentucky, and it is his conviction now that the owners of the said bonds are, at least to the extent of two-thirds, residents of Kentucky.

The Muhlenburgh Circuit Court entered an order removing the case to the United States Circuit Court, where a motion was subsequently made to remand and overruled, to which ruling and judgment plaintiffs by their counsel excepted. The injunction was thereupon dissolved by the Circuit Court "upon the face of the petition and exhibits filed therein." Trousdale and Alexander then filed their answers, and issues being joined, the cause came on upon the pleadings and an

agreed statement of facts and proofs, and a decree was entered dismissing the bill, and the case thereupon brought to this court.

*Mr. T. W. Brown* for appellants.

*Mr. D. M. Rodman* for appellees.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The main question at issue was the validity of the bonds, and that involved the levy and collection of taxes for a series of years to pay interest thereon and finally the principal thereof, and not the mere restraining of the tax for a single year. The grievance complained of was common to all the plaintiffs and to all whom they professed to represent. The relief sought could not be legally injurious to any of the tax-payers of the county, as such, and the interest of those who did not join in or authorize the suit was identical with the interest of the plaintiffs. The rule applicable to plaintiffs, each claiming under a separate and distinct right, in respect to a separate and distinct liability and that contested by the adverse party, is not applicable here. For although as to the tax for the particular year, the injunction sought might restrain only the amount levied against each, that order was but preliminary, and was not the main purpose of the bill, but only incidental. The amount in dispute, in view of the main controversy, far exceeded the limit upon our jurisdiction, and disposes of the objection of appellees in that regard.

As the plaintiffs sought to restrain the collection of taxes already levied, and any further levies by the county judge, and also a decree adjudging the invalidity of the bonds, the sheriff, who was about to enforce the collection, and the county judge, were necessary parties to the bill as framed, as were the bond-holders, whose interests were directly affected. There is nothing to show that the latter were so numerous as to render it impossible to bring them all before the court, and we need not discuss the proper course to be pursued in such a contin-

gency. The plaintiffs made two of the bondholders residing
in Kentucky, representing, the one the original, and the other
the new, bonds, parties defendant, and averred that they did
not know the names of the other holders of the bonds and
asked for notice to be given to the unknown bondholders.
Before that notice had been directed by the court, or the
names of the other bondholders had been ascertained and
steps taken to bring them in, the two non-resident bondholders
voluntarily became parties to the proceedings, and thereupon
the case was removed upon their application. And while the
two Kentucky bondholders, on the day of the order of removal,
withdrew the motion to dissolve and the demurrer, so far as
they were parties thereto, and declared that they had no de-
fence to make to the bill, because, as alleged in their affidavits,
they believed that the justice of the cause was with the plain-
tiffs, and they, therefore, did not choose to resist in the prem-
ises, denying at the same time all collusion, yet this is not a
controlling circumstance, in view of the frame of the bill.

Such being the attitude of the case, we are of opinion that
the motion to remand should have been granted. The removal
was had under the act of March 3, 1875, (18 Stat. 470,) but
cannot be sustained under the first clause of the second section
of that act, as the controversy was not between citizens of
different States, unless the parties could be so arranged on the
opposite sides of the matter in dispute as to bring about that
result; nor, under the second clause of the section, unless
there existed a separable controversy wholly between citizens
of different States, and which could be fully determined be-
tween them.

In *Harter* v. *Kernochan*, 103 U. S. 562, 566, this court said:
"Disregarding, as we may do, the particular position, whether
as complainants or defendants, assigned to the parties by the
draughtsman of the bill, it is apparent that the sole matter in
dispute is the liability of the township upon the bonds [de-
scribed in the bill]; that upon one side of that dispute are all
of the State, county and township officers and taxpayers, who
are made parties, while upon the other is Kernochan, the owner
of the bonds whose validity is questioned by this suit. He,

alone, of all the parties, is, in a legal sense, interested in the enforcement of liability upon the township. It is, therefore, a suit in which there is a single controversy, embracing the whole suit, between citizens of different States, one side of which is represented alone by Kernochan, a citizen of Massachusetts, and the other by citizens of Illinois." There the bonds were all owned and held by Kernochan, while here they are in large part held and owned by citizens of Kentucky. If this case admitted, then, of so arranging the parties as to put the county officers and taxpayers on one side of the controversy and the bondholders on the other, still the cause would not be susceptible of removal, under the first clause.

Was there, then, a separable controversy wholly between citizens of different States, and that a controversy which could be wholly determined between them? "The case," said Mr. Chief Justice Waite, in *Fraser* v. *Jennison*, 106 U. S. 191, 194, "must be one capable of separation into parts, so that in one of the parts a controversy will be presented with citizens of one or more States on one side and citizens of other States on the other, which can be fully determined without the presence of any of the other parties to the suit as it has been begun." Testing the right of removal by the case as made by the present bill, and as it stood at the time of removal, it was a case against all the bondholders, in respect to whom it was not denied that a large number were citizens of Kentucky, upon a cause of action not susceptible of division.

The plaintiffs were not prosecuting an action against individual bondholders for the cancellation of individual bonds. They were attacking the validity of the entire subscription and seeking a decree which would invalidate the entire issue. The petitioners were out of the jurisdiction, and if they had remained so would not have been concluded. The federal courts were open to them for the pursuit of the remedies which the law afforded. When they voluntarily submitted themselves to the jurisdiction of the state court, they became so associated with the resident bondholders as to render it impossible for them to contend that the controversy which involved all was separable as to them, and that they were

thereby enabled to transfer the particular suit, as it affected all the defendants, to the Circuit Court.

*The decree is reversed, and the cause remanded, with directions to remand it to the state court.*